**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RUOLE YE,

Petitioner,

v.

JAMES JANECHA, ET AL.,

Respondents.

Case No. 5:26-cv-03657-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On July 1, 2026, Petitioner Ruole Ye (A# 242-299-362) ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (the "Petition"), challenging her detention in immigration custody. (Dkt. 1 at 2-3.) On July 9, 2026, Respondents James Janecha, Warden of the Adelanto ICE Processing Center, Jaime Rios, Field Office Director, Immigration and Customs Enforcement ("ICE"), Todd M. Lyons, Acting Director of ICE, Todd Blanche, Attorney General of the United States, and Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS") (collectively, "Respondents") filed an Answer to the Petition (the

"Answer"). (Dkt. 7.) On July 9, 2026, Petitioner filed a Reply to the Answer (the "Reply"). (Dkt. 8.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 3, 9.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel and supported by an affidavit from Petitioner. (Dkt. 1 at 8; Dkt. 1-3.) Respondents had the opportunity to dispute these facts, but declined to do so. (Dkt. 7.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of the People's Republic of China. (Dkt. 1 at 4.) On November 27, 2023, Petitioner was lawfully admitted to the United States on a valid visa. (Id.) In March 2024, Petitioner applied for asylum. (Id.) Petitioner's asylum application remains pending and she is awaiting an interview. (Id.) On May 1, 2024, Petitioner completed her biometrics (fingerprint) appointment. (Id.) Now her application is pending before the Immigration Court. (Id.) On October 7, 2024, Petitioner received employment authorization (a work permit) and a Social Security number. (Id.) Petitioner has no criminal record. (Id.)

On May 23, 2026,[1] Petitioner was in the Port of Los Angeles area in San

[1] The Petition states that this occurred on May 24, 2026, but the Form I-213 indicates that this occurred on May 24, 2026. (Dkt. 7-1 at 3.) The difference in dates is not material.

Pedro, California, as part of a group visiting a U.S. vessel/carrier. (Id.) When screened by security and identified as a noncitizen traveling on a Chinese passport, she was arrested by ICE and transferred to the Adelanto ICE Processing Center, where she has remained in continuous ICE custody since that date. (Id.)

Petitioner has not received an individualized hearing before a neutral decisionmaker at which the Government bore the burden of proving, by clear and convincing evidence, that her continued detention was justified by danger to the community or risk of flight. (Id.) Petitioner has strong ties to the community and is neither a danger to the community nor a flight risk. (Id.)

Respondents provided a copy of Petitioner's Form I-213. (Dkt. 7-1.) According to the Form I-213, Petitioner first entered the United States with a B2 visitor visa on April 27, 2016. (Id. at 3.) Petitioner was arrested by ICE as part of an enforcement operation on May 23, 2026. (Id.) Immigration authorities positively identified Petitioner as she voluntarily passed through security at a Fleet Week event located at the Port of Los Angeles. (Id.) Immigration authorities questioned Petitioner about her immigration status and Petitioner admitted to being a citizen of China in the United States without legal status. (Id.) Immigration authorities then took Petitioner into custody. (Id.)

Respondents also provided a copy of an order from an Immigration Bond hearing on June 26, 2026. (Dkt. 7-2.) The Order of the Immigration Judge shows that Petitioner was provided a custody redetermination hearing pursuant to 8 C.F.R. § 1236. (Id. at 2.) The Order indicates that "[t]he Court conducted an individualized bond and custody redetermination hearing in this matter. During the hearing, the Court considered all arguments and evidence presented from both sides." (Id.) The Order further indicates that the Immigration Judge orally articulated its findings and reasons in support of the decision to deny release and there is an audio recording of the hearing to permit review by the Board of Immigration Appeals ("BIA"). (Id.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count One) is that her continued detention violates her substantive due process rights because it is not reasonably related to a legitimate governmental purpose. (Dkt. 1 at 5-6.) Petitioner's second claim for relief (Count Two) is that a bond hearing is an inadequate remedy for the substantive due process violation. (Id. at 6-7.) Petitioner seeks immediate release from custody. (Id. at 7.) Petitioner further seeks an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley,

133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful

description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, it is undisputed that Petitioner first entered the United States lawfully on April 27, 2016. (Dkt. 7-1 at 3.) It is further undisputed that Petitioner later applied for asylum and that application remains pending. (Dkt. 1 at 4.) Petitioner was granted both employment authorization and a Social Security number.[2] (Id.) Petitioner also has strong ties to the community and no criminal record. (Id.) Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on her pending asylum application, approved employment authorization and Social Security number, length of time she lived in the United States, and the ties she built to the community over the past many years. See, e.g., Gagik T. v. Chestnut, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) ("Judges of this district and others have repeatedly held, on facts materially similar to these, that a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process."); Kharitonova v. Albarran, 2026 WL 531441 at *2 (N.D. Cal.

---

[2] The fact that Petitioner was granted employment authorization necessarily means that Petitioner's asylum application was neither frivolous nor abandoned. See 8 C.F.R. § 208.7. The fact that Petitioner was granted both employment authorization and a Social Security number creates a significant reliance interest in Petitioner's ability to remain out of custody and continue working.

Feb. 25, 2026) ("Although the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained."); Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioner's arrest on May 23, 2026, without a pre-deprivation hearing violated Petitioner's procedural due process rights. See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given this violation of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return h[er] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the

last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The fact that Petitioner received a post-deprivation bond hearing does not remedy the violation of Petitioner's procedural due process rights. (Dkt. 7-2); see, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026

WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[3] See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community."

[3] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because Petitioner has no criminal history, an employment authorization, and a Social Security number. (Dkt. 1 at 4.) Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

(internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being detained in violation of her due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure her release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[4]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v.

---

[4] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the EAJA. (Dkt. 1 at 7.) The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner Ruole Ye (A# 242-299-362) ("Petitioner") from custody (subject only to conditions that were in place prior to her May 23, 2026 detention, if any) and return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's

suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: September 10, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE